1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT**

8

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10  MILLO MCKINLEY,                              CASE NO. 1:04-cv-5094 TAG

11              Plaintiff,                       MEMORANDUM DECISION AND ORDER
                                                 ON PLAINTIFF'S APPEAL FROM
12  _____             ADMINISTRATIVE DECISION
        _____vs.
13                                               ORDER DIRECTING THE CLERK TO
                                                 ENTER JUDGMENT IN FAVOR OF
14  JO ANNE B. BARNHART,                         DEFENDANT AND AGAINST PLAINTIFF
    Commissioner of Social Security,
15
                Defendant.
16  _____/

17          Plaintiff Millo McKinley ("Claimant" or "Plaintiff") seeks judicial review of an

18  administrative decision denying his claim for disability benefits under the Social Security Act

19  ("Act").  Pending before the Court is Claimant's appeal from the administrative decision of the

20  Commissioner of Social Security ("Commissioner").  Claimant filed his complaint on January 16,

21  2004, and his opening brief on September 27, 2004.  The Commissioner filed her opposition to the

22  appeal on November 30, 2004.  Claimant filed a reply brief on January 5, 2005.

23          Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed

24  before a United States Magistrate Judge, and, by an order dated June 14, 2004, this action was

25  assigned to the United States Magistrate Judge for all further proceedings.

26                                    **JURISDICTION**

27  _____On January 16, 2002, Claimant filed an application for Supplemental Security Income

28  ("SSI") benefits, alleging disability since February 14, 2001, due to pain in his lower back and neck.

(Administrative Record ("AR") 72-75, 77).  The application was denied initially and on

reconsideration.  On August 19, 2003, Claimant appeared before Administrative Law Judge ("ALJ")

James Ross, at which time he heard testimony solely from claimant.  (AR 30-40).  On September 22,

2003, the ALJ issued a decision finding that Claimant was not disabled.  (AR 14-19).  The Appeals

Council denied a request for review on November 13, 2003.  (AR 6-8).  Therefore, the ALJ's

decision became the final decision of the Commissioner, which is appealable to the District Court

pursuant to 42 U.S.C. § 405(g).  Claimant filed this action for judicial review pursuant to 42 U.S.C.

§ 405(g).

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the

briefs of both Claimant and the Commissioner and will only be summarized here.  It was noted by

the ALJ that Claimant had previously filed an application for SSI in September of 1998 which was

denied at the initial stage on December 31, 1998.  (AR 14).

Claimant was born on August 13, 1960, making him 43 years old on the date of the ALJ's

decision.  (AR 72, 34, 19).  At the administrative hearing held on March 11, 2003, Claimant stated

that he lived for free in a home with an elderly gentleman in exchange for cooking and cleaning for

him.  (AR 37).  He testified that the highest grade of school he completed was the tenth grade and

that he has "a reading problem."  (AR 34).  He indicated he does not have a driver's license, and

does not drive a car.  (AR 34).  He testified that he last worked about four years prior to the

administrative hearing as a ranch hand during the day and a security guard at night.  (AR 34).  He

indicated that he worked at this job for four and a half months and left the job "[b]ecause of [his]

back."  (AR 34).  However, he stated that he was not currently receiving medical treatment because

he could not afford it, nor has he ever had surgeries or attended physical therapy.  (AR 35, 38).

Claimant also testified that he has problems with his right wrist, described as a tingling sensation in

his fingers and numbness in his thumb.  (AR 36).  Nevertheless, he indicated that he had no trouble

picking up small items from a table and could lift and hold a phone book for about five minutes.

(AR 36).  He also testified that he has shoulder problems, described as "a pinched nerve every once

in awhile in between [his] shoulder and shoulder blades."  (AR 37).

1    Claimant stated that he could walk two blocks before needing to stop, sit for 10 to 15 minutes

2   before needing to stand, and stand and lean about 20 minutes at one time.  (AR 36).  He indicated

3   that he could not kneel, stoop or squat to the ground without pain.  (AR 36).  Claimant testified that

4   he cooks and cleans for himself and the gentleman he lives with, but that he has difficulty with these

5   duties "every day."  (AR 37).  He indicated that he does not have any hobbies and that he lays down

6   on the couch "all day long."  (AR 38).

7    Claimant stated that he takes Percocet and Aspirin for pain.  (AR 37).  With regards to the

8   narcotic pain reliever, Percocet, Claimant indicated that he obtained it from his roommate.  (AR 37-

9   38).  Claimant testified that the worst pain he has is in his lower back, and, on a scale of one to ten,

10   with one being no pain and ten being the highest amount of pain, he described the pain as a seven

11   and a half.  (AR 38).

12                **SEQUENTIAL EVALUATION PROCESS**

13    The Social Security Act defines "disability" as the "inability to engage in any substantial

14   gainful activity by reason of any medically determinable physical or mental impairment which can be

15   expected to result in death or which has lasted or can be expected to last for a continuous period of

16   not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides

17   that a claimant shall be determined to be under a disability only if his impairments are of such

18   severity that claimant is not only unable to do his previous work but cannot, considering claimant's

19   age, education and work experiences, engage in any other substantial gainful work which exists in

20   the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

21    The Commissioner has established a five-step sequential evaluation process for determining

22   whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if a claimant is

23   engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b),

24   416.920(b).  If he is not, the decision maker proceeds to step two, which determines whether a

25   claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§

26   404.1520(c), 416.920(c).

27   ///

28   ///

3

1    If a claimant does not have a severe impairment or combination of impairments, the disability

2    claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which

3    compares a claimant's impairment with a number of listed impairments acknowledged by the

4    Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),

5    416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed

6    impairments, a claimant is conclusively presumed to be disabled.  If the impairment is not one

7    conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines

8    whether the impairment prevents a claimant from performing work he has performed in the past.  If

9    a claimant is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e),

10   416.920(e).  If a claimant cannot perform this work, the fifth and final step in the process determines

11   whether he is able to perform other work in the national economy in view of his age, education and

12   work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  See, Bowen v. Yuckert, 482 U.S. 137

13   (1987).

14      The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement

15   to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is

16   met once a claimant establishes that a physical or mental impairment prevents him from engaging in

17   his previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant

18   can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the

19   national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir.

20   1984).

21                              **STANDARD OF REVIEW**

22      Congress has provided a limited scope of judicial review of a Commissioner's decision.  See,

23   42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when

24   the determination is not based on legal error and is supported by substantial evidence.  See, Jones v.

25   Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812

26   F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work

27   contrary to treating physician's findings).  "The [Commissioner's] determination that a claimant is

28   not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v.

4

1  Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more

2  than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less

3  than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v.

4  Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence

5  "means such evidence as a reasonable mind might accept as adequate to support a conclusion."

6  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and

7  conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.

8  Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as

9  a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan,

10  877 F.2d 20, 22 (9th Cir. 1989) (quoting Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

11      It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  Richardson,

12  402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold

13  the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a

14  decision supported by substantial evidence will still be set aside if the proper legal standards were

15  not applied in weighing the evidence and making the decision.  Brawner v. Secretary of Health and

16  Human Services, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support

17  the administrative findings, or if there is conflicting evidence that will support a finding of either

18  disability or nondisability, the finding of the Commissioner is conclusive.  Sprague v. Bowen, 812

19  F.2d 1226, 1229-1230 (9th Cir. 1987).

20                          **ALJ'S FINDINGS**

21      The ALJ found at step one that Claimant has not engaged in substantial gainful activity since

22  his alleged onset date, February 14, 2001.  (AR 15).  At step two, the ALJ determined that Claimant

23  has the severe impairments of lumbosacral sprain/strain with low back pain, etiology unclear, right

24  cervical trapezial sprain/strain, and right carpal tunnel syndrome, but that he does not have an

25  impairment or combination of impairments listed in or medically equal to one of the Listings

26  impairments.  (AR 16).  The ALJ found that Claimant's pain allegations were not as limiting as he

27  alleged, his pain complaints appeared to be exaggerated, and; therefore, his allegations regarding his

28  limitations were not totally credible.  (AR 16-18).

The ALJ concluded that Claimant has the residual functional capacity to lift and carry ten pounds frequently and 20 pounds occasionally, to stand and walk six hours in an eight hour workday and to sit six hours in an eight hour workday. (AR 17). He also found that Claimant could only occasionally stoop, crouch and climb and could only occasionally squeeze with his right hand. (AR 17). The ALJ found that, based on Claimant's ability to perform light exertional work, Claimant could return to his past relevant work as a security guard, both as actually performed by Claimant and as generally performed in the national economy. (AR 18). Accordingly, the ALJ determined at step four of the sequential evaluation process that Claimant was not disabled within the meaning of the Social Security Act. (AR 18-19).

## ISSUES

Claimant contends that the Commissioner erred as a matter of law. Specifically, he argues that:

1. The ALJ's residual functional capacity finding is not supported by substantial evidence since the ALJ erred by failing to mention Claimant's assessed limitation of only occasional gripping; and

2. The ALJ erred at step four of the sequential evaluation process by finding that Claimant could perform his past relevant work as a security guard.

The Court must uphold the Commissioner's determination that Claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**A. Residual Functional Capacity Assessment**

Residual functional capacity ("RFC") is defined as "what an individual can still do despite his or her limitations." SSR 96-8p. Claimant's RFC is not a medical issue, rather it is an administrative finding, dispositive of the case, which is reserved to the Commissioner, and, by delegation of authority, to the ALJ. SSR 96-5p. It is thus the ALJ's responsibility to make a RFC determination. However, in making his finding, the ALJ must consider the whole record and explain how he weighs the medical evidence and testimony. SSR 96-8p.

1    The ALJ found that Claimant has the RFC to lift and carry ten pounds frequently and 20

2    pounds occasionally, to stand and walk six hours in an eight hour workday and to sit six hours in an

3    eight hour workday.  (AR 17).  He also found that Claimant could only occasionally stoop, crouch

4    and climb and could only occasionally squeeze with his right hand.  (AR 17).  Claimant's primary

5    contention is that the ALJ's RFC determination is unsupported by the evidence of record in this case.

6    (Court Doc. 14, pp. 3-7).  The undersigned disagrees.

7    In support of Claimant's argument that the ALJ's RFC determination is erroneous, he asserts

8    that the ALJ erred by rejecting the opinions of an examining physician to find that Claimant was

9    capable of performing light work, reduced by significant non-exertional impairments consisting of

10   upper extremity limitations.  (Court Doc. 14, pp. 3-7).  Claimant argues that the ALJ specifically

11   erred by ignoring the opinion of examining physician, Norman Linder, M.D., that claimant is limited

12   to only occasional gripping.  (Court Doc. 14, p. 3).

13   The courts distinguish among the opinions of three types of physicians:  treating physicians,

14   physicians who examine but do not treat the claimant (examining physicians) and those who neither

15   examine nor treat the claimant (nonexamining physicians).  Lester v. Chater, 81 F.3d 821, 839 (9th

16   Cir. 1996).  A treating physician's opinion is given special weight because of his familiarity with the

17   claimant and his physical condition.  Fair v. Bowen, 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus,

18   more weight is given to a treating physician than an examining physician.  Lester, 81 F.3d at 830.

19   However, the treating physician's opinion is not "necessarily conclusive as to either a physical

20   condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 7474, 751 (9th Cir.

21   1989) (citations omitted).

22   The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself

23   constitute substantial evidence that justifies the rejection of the opinion of either an examining

24   physician or a treating physician."  Lester, 81 F.3d at 830.  Rather, an ALJ's decision to reject the

25   opinion of a treating or examining physician, may be *based in part* on the testimony of a

26   nonexamining medical advisor.  Magallanes, 881 F.2d at 751-55; Andrews v. Shalala, 53 F.3d 1035,

27   1043 (9th Cir. 1995).  The ALJ must also have other evidence to support the decision such as

28   laboratory test results, contrary reports from examining physicians, and testimony from the claimant

7

1   that was inconsistent with the physician's opinion.  Magallanes, 881 F.2d at 751-52; Andrews, 53

2   F.3d 1042-43.  Moreover, an ALJ may reject the testimony of an examining, but nontreating

3   physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate

4   reasons for doing so, and those reasons are supported by substantial record evidence.  Roberts v.

5   Shalala, 66 F.3d 179, 184 (9th Cir. 1995).

6          Dr. Linder examined Claimant on June 27, 2002.  (AR 112-115).  Claimant's chief complaints

7   were of low back pain and right shoulder pain shooting down the right upper extremity to the hand.

8   (AR 112).  Dr. Linder indicated that, upon examination, Claimant was in no apparent distress, he was

9   able to transfer on and off the examination table independently and he was able to take off his shoes

10  and socks and put them back on independently.  (AR 113).  Dr. Linder noted that Claimant's gait was

11  normal, toe walking was normal and heel walking was normal.  (AR 113).  He further noted

12  tenderness to palpation in Claimant's right cervical trapezial muscles and lumbosacral paraspinals and

13  reported a positive Tinel's sign on Claimant's right wrist.  (AR 114).  Dr. Linder indicated that

14  Claimant's muscle strength in the lower and upper extremities, including Claimant's hand grip, was

15  5/5.  (AR 114).  Dr. Linder diagnosed Claimant with right cervical trapezial sprain/strain, right carpal

16  tunnel syndrome, and lumbosacral sprain/strain.  (AR 115).  Based on his findings, Dr. Linder opined

17  that Claimant could frequently lift up to 10 pounds and occasionally lift up to 20 pounds, could stand

18  and/or walk for a total of six hours in an eight-hour day with routine breaks, could sit for a total of six

19  hours in an eight-hour day with routine breaks, and should refrain from frequent climbing, stooping

20  and crouching and frequent squeezing and gripping with the right hand.  (AR 115).

21         In this case, in making his physical RFC determination, the ALJ generally agreed with

22  Dr. Linder's findings, except to the extent that they were inconsistent with Claimant's testimony and

23  the weight of the record evidence.  (AR 17)

24         Claimant's own testimony reveals that he left his last job as a ranch hand and a security guard

25  "[b]ecause of [his] back" not because of difficulties with his ability to grip.  (AR 34).  Claimant's

26  disability report, submitted with his application for SSI, indicates that the illnesses, injuries or

27  conditions that limited his ability to work were "pain in [his] lower back and . . . neck," and he

28  indicated on the form that the reason he stopped working was due to the pain he has "in [his] lower

1    back and neck." (AR 77). The disability report is devoid of any complaints or conditions related to

2    Claimant's ability to grip. However, Claimant did testify at the administrative hearing that he has

3    problems with his right wrist, described as a tingling sensation in his fingers and numbness in his

4    thumb. Nevertheless, he indicated that he had no trouble picking up small items from a table and

5    could lift and hold a phone book for about five minutes. (AR 36).

6          George W. Bugg, M.D., a nonexamining state agency physicians, indicated on August 8,

7    2002, that Claimant is capable of standing, walking, or sitting up to six hours (each) in an eight hour

8    workday and could lift and/or carry 20 pounds occasionally and 10 pounds frequently. (AR 118-125).

9    On November 20, 2002, nonexamining physician Clair T. Steggall, M.D., affirmed Dr. Bugg's

10   findings. (AR 125). The nonexamining physicians indicated that Claimant had an unlimited ability

11   to push and/or pull with his upper and lower extremities, no manipulative limitations, no visual

12   limitations, no communicative limitations and no environmental restrictions. (AR 119-122). They

13   opined that Claimant's postural limits were the ability to climb, kneel, crouch and crawl only

14   occasionally and the ability to balance and stoop frequently. (AR 120). They concluded that the

15   examining source statement on file regarding Claimant's physical capacities did not significantly

16   differ from their findings. (AR 121).

17         The ALJ accorded substantial weight to the opinions of the state agency physicians, whose

18   opinions were supported by Claimant's statements as well as by the opinions of Dr. Linder. (AR 17).

19   The ALJ also indicated that he accorded great evidentiary weight to the opinion of Dr. Linder, "except

20   with respect to his limitation of no frequent gripping with the right hand." (AR 17). Nevertheless,

21   the ALJ did find that Claimant suffered from the severe impairment of right carpal tunnel syndrome,

22   as found by Dr. Linder, which restricted Claimant to only occasional squeezing with his right hand.

23   (AR 16-17).

24         As noted above, although Dr. Linder diagnosed Claimant with right carpal tunnel syndrome,

25   apparently based on a positive Tinel's sign on claimant's right wrist, Dr. Linder indicated that

26   Claimant's muscle strength in the lower and upper extremities, including Claimant's hand grip, was

27   5/5 and that Claimant could frequently lift up to 10 pounds and occasionally lift up to 20 pounds.

28   (AR 114-115). The nonexamining physicians concurred with Dr. Linder's findings regarding

9

Claimant's RFC but found that Claimant had an unlimited ability to push and/or pull with his upper and lower extremities and no manipulative limitations.  (AR 119-122).  Moreover, a review of Claimant's own statements, as noted above, reveals that Claimant attributes his alleged inability to work to back and neck pain, not an inability to grip.  Claimant's disability report is devoid of any complaints or conditions related to Claimant's ability to grip, and he indicated at the administrative hearing that he had no trouble picking up small items from a table and could lift and hold a phone book for about five minutes.  (AR 36).  Nevertheless, the ALJ did conclude that Claimant had the severe impairment of right carpal tunnel syndrome and, as a result, was restricted to only occasional squeezing with his right hand.  (AR 16-17).  When this finding is reviewed in conjunction with Dr. Linder's report, it is apparent that the finding does not significantly differ from Dr. Linder's opinions. In any event, based on the foregoing, the ALJ provided specific, legitimate rationale for any discounting of Dr. Linder's finding regarding Claimant's ability to grip.  Flaten, 44 F.3d at 1463; Fair, 885 F.2d at 605.

The ALJ properly concluded that Claimant was restricted to only occasional squeezing with his right hand and provided specific, legitimate rationale for discounting Dr. Linder's specific finding of no frequent gripping.  The ALJ appropriately concluded that Claimant retains the RFC to perform light exertion work with only occasional stooping, crouching and climbing and only occasional squeezing with his right hand.  (AR 17).  The ALJ's RFC determination in this case was based on substantial evidence and was entirely accurate.

**B. Step Four**

Claimant contends that substantial record evidence supports a finding that he cannot perform his past relevant work as a security guard.  (Court Doc. 14, pp. 6-8).

At step four of the sequential evaluation process, the Commissioner determines whether Claimant can perform work he has performed in the past.  If Claimant is able to perform his past relevant work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Claimant meets his burden of establishing he cannot perform this work, the burden shifts to the Commissioner to show, at step five in the process, that Claimant is able to perform other substantial gainful work in the national economy in view of his age, education and work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f);

1    see, Bowen, 482 U.S. at 137.  Thus, Claimant has the initial burden of proving he cannot perform his

2    past relevant work, and only then does the burden shift to the Commissioner to demonstrate that he

3    can perform a significant number of jobs in the national economy.  Thomas v. Barnhart, 278 F.3d

4    947, 955 (9th Cir. 2002).

5         Claimant argues that his functional limitations, as defined by Dr. Linder, prevent him from

6    performing his past relevant work as a security guard, which requires frequent use of his right hand to

7    perform the grasping and gripping demands the job requires.  (AR 6-7).

8         First, as noted above, the ALJ appropriately discounted Dr. Linder's findings with regard to

9    Claimant's ability to grip.  Supra.  Therefore, Dr. Linder's findings as to Claimant's grip limitations

10   are irrelevant with regards to the ALJ's step four determination.

11        Next, the ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities.

12   Morgan v. Commissioner, 169 F.3d 595, 599 (9th Cir. 1999); Magallanes v. Bowen, 881 F.2d 747,

13   751 (9th Cir. 1989).  When reviewing the Commissioner's decision, this Court must uphold the

14   decision if the findings of fact are supported by substantial evidence.  Delgado v. Heckler, 722 F.2d

15   570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Moreover, the Court must ultimately uphold the

16   Commissioner's decision where the evidence is susceptible to more than one rational interpretation.

17   Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Accordingly, this Court has a limited role in

18   determining whether the ALJ's decision is supported by substantial evidence and may not substitute

19   its own judgment for that of the ALJ even if it might justifiably have reached a different result upon

20   de novo review.  See, 42 U.S.C. § 405(g).  It is not the role of this Court to second-guess the

21   Commissioner.  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)

22        As noted by the Commissioner, Claimant's own description of his past work as he performed

23   it did not include the need for frequent squeezing or gripping.  (Court Doc. 16, p. 9).  Claimant's

24   disability report, submitted with his application for SSI, described his job as a security guard as

25   follows:  "Guard Von's parking lot.  Took a walk around the lot every hour."  (AR 78).  He noted that

26   he did not use machines, tools or equipment, the job did not require technical knowledge or skill, and

27   he did not supervise others.  (AR 78).  On his work history report, Claimant indicated he worked

28   seven hours a day, walked Von's parking lot every hour, and wrote down his observations.  (AR 87).

11

1  Although Claimant did indicate he spent seven hours a day writing, typing or handling small objects

2  (AR 78, 87), he testified at the administrative hearing that he had no trouble picking up small items

3  from a table and could lift and hold a phone book for about five minutes (AR 36).

4       Based on the ALJ's accurate RFC determination (see, supra), the ALJ concluded that

5  Claimant could return to his past relevant work as a security guard, which is light exertional level,

6  semi-skilled work, both as actually performed by Claimant and as generally performed in the national

7  economy. (AR 18). The ALJ in this case extensively summarized the evidence of record and

8  properly concluded that Claimant could occasionally squeeze with his right hand and, as a result,

9  could perform his past relevant work as a security guard. (AR 18). The undersigned is not in a

10  position to second guess the ALJ's determination and declines to do so. Fair, 885 F.2d at 604. In any

11  event, Claimant's description of his security guard work, which required him to walk a grocery store

12  parking lot every hour and write down his observations, does not appear to demand greater than light

13  exertional work or more than occasional squeezing with his right hand. Accordingly, the ALJ's step

14  four determination, that Claimant retains the ability to perform his past relevant work as a security

15  guard, is supported by substantial evidence and thus free of error.

16  **<u>CONCLUSION</u>**

17       For the reasons outlined above, the undersigned finds no error in the ALJ's analysis. As such,

18  the Commissioner's decision to deny Claimant disability benefits is supported by substantial evidence

19  in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES

20  Claimant's appeal from the administrative decision of the Commissioner of Social Security.

21       The Clerk of this Court is DIRECTED to enter judgment as a matter of law in favor of

22  Defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff/Claimant

23  Millo McKinley.

24

25  IT IS SO ORDERED.

26  **Dated:    July 13, 2005**                    **/s/ Theresa A. Goldner**
    j6eb3d                                           UNITED STATES MAGISTRATE JUDGE

27

28

12